IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| **TODD DUNCAN ERLICH and** <br> **MARION SUZANNE SAITH-ERLICH** <br> a/k/a **MARION S. SAITH** a/k/a <br> **MARION S. JENNINGS** a/k/a <br> **MARION S. SAITH-JENNINGS,** <br><br> **Debtor** | : Bankruptcy No. 05-37026 BM <br> : <br> : <br> : <br> : <br> : <br> : Chapter 7 |

*******************************

| | |
|---|---|
| **KAREN ERLICH, now known as** <br> **KAREN M. HARKINS,** <br><br> **Plaintiff** <br><br> v. <br><br> **TODD DUNCAN ERLICH,** <br><br> **Defendant** | : <br> : <br> : <br> : <br> : <br> : Adversary No. 06-2172 BM <br> : <br> : <br> : **Complaint To Determine** <br> : **Dischargeability Of Debt** |

Appearances:   Mary Bower Sheats, Esq. for Plaintiff
James E. Miscavage, Esq. for Defendant/Debtor

## MEMORANDUM OPINION

Plaintiff Karen Erlich, the former wife of debtor Todd Erlich, asserts that a debt owed to her by debtor which arose in the course of their divorce proceeding is not dischargeable by virtue § 523(a)(15) of the Bankruptcy Code.

Debtor maintains that the debt lies within the scope of § 523(a)(15)(A) or (B) and therefore is dischargeable.

Judgment will be entered in favor of plaintiff and against debtor Todd Erlich debtor for reasons set forth in this memorandum opinion.

## – FACTS –

Plaintiff and debtor Todd Erlich presently are fifty-one and fifty-three years old, respectively. They married in July of 1977 and separated in March of 1995. Plaintiff commenced a divorce action against debtor in the Court of Common Pleas of Allegheny County, Pennsylvania, in March of 1995. A divorce decree terminating their marriage issued in December of 1997.

Two daughters were born during their marriage. They are nineteen and sixteen years old, respectively. The younger daughter will be eighteen years old in June of 2008.

Plaintiff and debtor Todd Erlich are high school graduates. Debtor attended college but is twelve credits short of receiving a degree in criminology.

Both parties to this adversary action have re-married.

Plaintiff re-married in May of 2002 and resides with her present husband in a mobile home she owns. He is fifty-one years old. Her two daughters live with them.

Debtor Todd Erlich re-married in October of 2002 and lives with his present wife (and co-debtor) in what had been the marital residence before he and plaintiff were divorced. She is sixty-four years old and works on a part-time basis as a school crossing guard. In addition, she also receives both a pension and social security payments.

Debtor was employed as a police officer for twenty-four years by Castle Shannon Police Department until April of 2005, when his employment was involuntary terminated. Starting in September of 2008 when he is fifty-five years old, debtor will begin receiving

a pension from this employer. The amount of the pension will not be affected in any way if debtor is employed elsewhere at that time.

A family settlement agreement between plaintiff and debtor was approved on December 9, 2004, by the state court with jurisdiction over their divorce proceeding[1]. It was entered on the court's docket the following day.

The family settlement agreement provided in relevant part that:

(1)   Debtor would designate plaintiff (or her estate) as the sole beneficiary of a $25,000 life insurance policy he maintained from his employment by Castle Shannon Police Department. She (or her estate) was to remain the beneficiary until debtor's death or he instead paid the sum of $25,000 to her (or her estate);

(2)   Plaintiff would retain his pension from the above employment by Castle Shannon Police Department;

(3)   Plaintiff would execute a deed conveying her interest in the marital residence to debtor, who in turn would indemnify her and hold her harmless for any mortgages, debts or taxes owed on the property;

(4)   Debtor would refinance the debt owed on the marital residence and would pay plaintiff the sum of $50.000 from the loan proceeds;

(5)   In addition to paying plaintiff the sum of $50,000 from the loan proceeds, debtor would pay plaintiff the sum of $18,375 in installments of $375 per month for a period of forty-nine months.

Pursuant to the family settlement agreement, debtor refinanced the debt owed on the former family residence and paid plaintiff the sum of $50,000 from the loan proceeds.

---

[1] The reason why the agreement was reached some seven years after plaintiff and debtor were divorced is not apparent from the record. We need not, however, be concerned about this. Plaintiff and debtor do not contest the validity and the binding effect of the agreement.

Debtor and his present wife filed a voluntary joint chapter 7 petition on October 13, 2005. The schedules accompanying the petition disclosed assets with a total declared value of $86,450 and liabilities totaling $213,835.

Included among the assets listed on the schedules was the former marital residence in which debtor and his present wife now reside and debtor Todd Erlich's pension. The former had a declared value of $63,500 while the latter had a declared value of $2,630 per month. Debtor Todd Erlich did not claim an exemption in the residence but did exempt the pension pursuant to § 522(d)(5) and § 522(d)(10)(E) of the Bankruptcy Code. No objections were raised to these exemptions.

Included among the debts listed on the schedules was a secured claim in the amount in the amount of $89,910 which arose from the mortgage debtor granted when he refinanced the debt owed on it. In addition, plaintiff was listed as having general unsecured claims in the amounts of $18,735 and $1.00. The former arose from debtor's obligation to pay plaintiff the sum of $18,375 in monthly installments. The latter arose from debtor's obligation to designate plaintiff (or her estate) as the sole beneficiary of his life insurance policy or pay her the sum of $25,000 instead.

The chapter 7 trustee reported after conducting the § 341 meeting that no assets of the bankruptcy estate were available for distribution to pre-petition creditors. In addition, debtors reaffirmed the debt they incurred in refinancing the former marital residence.

Plaintiff commenced this adversary action against debtor Todd Erlich on January 12, 2006. She seeks a determination that the debtor's obligations to pay her the sum of $18,375 in monthly installments and to name her the beneficiary of his life insurance policy or pay her the sum of $25,000 instead are not dischargeable by virtue § 523 (a)(15) of the Bankruptcy Code.[2]

The state court having jurisdiction over the above divorce proceeding issued an order on April 11, 2006, reducing debtor's child support obligation to $711 per month due to the emancipation of his older daughter. The reduced payment was for the support of his younger daughter only.

The adversary action has been tried and is now ready for decision.

## – ANALYSIS –

When debtors filed their bankruptcy petition, § 523 of the Bankruptcy Code provided in part as follows:

> (a) A discharge under section 727 ... does not discharge an individual debtor from any debt --- ....
>> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce ... [or] divorce decree or other order of a court of record... unless
>>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor...; or
>>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse....

11 U.S.C. § 523(a).

---

[2.] In response to a query by the court, counsel to plaintiff stated on the record that plaintiff was not seeking a determination that any portion of the above was excepted from discharge by § 523 (a)(5) of the Bankruptcy Code.

It is not disputed in this adversary action that: (1) debtor paid the sum of $50,000 to plaintiff after he refinanced the debt previously owed on the former marital residence; (2) debtor did not pay the sum of $18,375 to plaintiff in installments of $375.00 per month; and (3) debtor has allowed the above life insurance policy to lapse and has not paid plaintiff the additional sum of $25,000 instead.

Bankruptcy is intended to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh". *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002). Bankruptcy is not, however, only an ameliorative right of a debtor; it also is a remedy for creditors. Circumstances may arise in which giving a debtor a "fresh start" takes a back seat to protecting a creditor. A debtor might not be able in every instance to escape all debts owed by the mere expedient of declaring bankruptcy. *Id.*, 310 F.3d at 311.

Because of this concern with providing a debtor a "fresh start", the various exceptions to discharge of a debt found at § 523(a) *generally* are construed "narrowly against the creditor and in favor of the debtor". *Id.*, 310 F.3d at 311. As a consequence, the party objecting to the discharge of a particular normally has the burden of proving, by a preponderance of the evidence, that the debt is not dischargeable. *Grogan v. Garner*, 498 U.S. 279, 286-91, 111 S.Ct. 654, 659-61, 112 L.Ed.2d 755 (1991). These principles are not, however, true in every instance. Exceptions to these principles apply with respect to certain subsections of § 523(a).

The United States Court of Appeals for the Third Circuit, for instance, has determined that Congress enacted § 523(a)(8) to prevent abuses of and to protect education loan programs. As a consequence, the *debtor* rather than the creditor has the burden of proving that an undue hardship will result if the debt is not discharged. *Pennsylvania Higher Education Assistance Agency v. Faish*, 72 F.3d 298, 301-02 (3d Cir. 1995), *cert denied*, 518 U.S. 1047, 117 S.Ct. 24, 135 L.Ed.2d 1118 (1996).

The same is true of § 523(a)(15), the provision whose application is at issue in this case. The policy of favoring the debtor and providing him or her with a "fresh start" is "tempered" somewhat for obligations arising from a divorce. *Matter of Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998). Congress enacted § 523(a)(15) to protect former spouses and children of a debtor. *Id.*, 148 F.3d at 882. This in turn requires modification of the above principle concerning who has the burden of proof in a § 523 (a) proceeding.

The structure of § 523(a)(15) provides guidance concerning who has the burden of proof in such matters.

Subsection 523(a)(15) sets forth an *exception* to the discharge of a debt. A debt of the kind described in § 523(a)(15) incurred in connection with a divorce, divorce decree or other order of a court of record is generally excepted from discharge.

Subsections (A) and (B) of § 523(a)(15) in turn set forth *exceptions to this exception*. Such a debt is excepted from discharge *unless:* (1) as set forth in subpart (A), the debtor does not have the ability to pay the debt from disposable income; or (2)

the benefit to the debtor if the debt is discharged outweighs the detrimental consequences to the debtor's former spouse or children. *Id.*, 148 F.3d at 883.

It is a long-standing principle of bankruptcy law that a creditor who asserts that a debt is *excepted* from discharge has the burden of so proving. When the debtor asserts that an *exception to this exception* applies, the debtor has the burden of so proving. *Hill v. Smith*, 260 U.S. 592, 594-95, 43 S.Ct. 219, 67 L.Ed. 419 (1923).

It follows that the burden of proof in this case is a shifting one. Plaintiff must prove, by a preponderance of the evidence, that: (1) the debt owed to her does not fall within the scope of § 523(a)(5); and (2) debtor incurred the debt in connection with a divorce proceeding. If plaintiff meets her burden in this regard, the burden then shifts to the debtor to prove, by a preponderance of the evidence, that: (1) he is not able to pay the obligation from disposable income or property; or (2) the benefit to debtor of discharging the debt is greater than the detriment to the plaintiff. *Matter of Crosswhite.*, 148 F.3d at 884-85.

Debtor does not deny that plaintiff has met her burden. As a result, the burden of proof shifts to debtor to establish that subpart (A) or (B) applies.

## § 523(a)(15)(A)

Various tests have been devised for determining whether a debt lies within the scope of § 523(a)(15)(A). Some courts have utilized the disposable-income test; others have applied a totality-of-the-circumstances test; still others have utilized the undue hardship test applicable to § 523(a)(8) to determine whether an education loan falls lies within the scope of that provision. *Myrvang v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1120 n.6 (9th Cir. 2000).  A majority of courts have employed the disposable-income test to determine whether a debtor has the ability to pay the debt. *Jestice v. Jestice (In re Jestice)*, 168 Fed. Appx. 39, 44 (6th Cir. 2006).

It does not matter which of these tests we employ in this adversary action. We will employ the disposable-income test, but the outcome would be the same if we employed the totality-of-the circumstances test or the undue-hardship test used for § 523(a)(8).

When determining whether a debtor is able to pay a debt for purposes of § 523 (a)(15)(A), we begin with his or her ability to do so *at the time of trial*. Our inquiry need not stop there, however. Debtor's *future* earning potential and expenses also may be considered. *Jestice*, 168 Fed. Appx. at 44. The income and expenses of debtor's spouse or live-in companion also may be considered. *Short v. Short (In re Short)*, 232 F.3d 1018, 1023 (9th Cir. 2000).

Under the disposable-income test, a debt is dischargeable in accordance with § 523(a)(15)(A) only if having to pay it will reduce the amount of income of debtor and

dependents below a level that is reasonably necessary for their support. *Jestice*, 168 Fed. Appx. at 44. The debtor and his or her dependents are required to forego luxury items and minimize their quotidian expenses. *Id.*

After debtor Todd Erlich was terminated from his employment by Castle Shannon Police Department, he held several jobs as an automobile mechanic. His wage for these jobs ranged from $11.00 per hour to $12.35 per hour. Starting in November of 2006, debtor was employed by Lowe's Home Improvement as a team leader, a position similar to assistant manager. He works thirty-nine hours per week and is paid at the rate of $11.43 per hour.

Debtor Todd Erlich's present wife is employed on a part-time basis as a school crossing guard for which she is paid $10.74 per hour. She also receives $235 per month from a retirement pension and $1,369 per month in social security payments.

The schedules attached to debtors' bankruptcy petition indicated that their monthly net income in October of 2005 was $3,130.83 while their expenses totaled $3,750 per month. They offered evidence at the trial of this case showing that their combined monthly net income had increased to $3,209 while their monthly expenses had increased to $4,048 per month. Included among the expenses listed at trial was $711 per month in child support debtor Todd Erlich pays for his younger daughter. According to the evidence submitted by debtors, their expenses exceeded their net income by $839 per month ($4,048 − $3,209 = $839).

If debtors' bankruptcy schedules and the evidence they offered at trial are accepted at face value, at first glance it might appear to follow that debtor Todd Erlich lacks the ability to pay the debt he owes to plaintiff. The debt, in other words, is dischargeable by virtue of § 523(a)(15)(A).

Further scrutiny of the evidence offered at trial, however, indicates that the debt at issue in this case does *not* lie within the scope of § 523(a)(15)(A) and is not dischargeable on that basis. We so conclude for two reasons.

We noted previously that a debtors' expected *future* stream of income may be considered when determining whether § 523(a)(15)(A) applies. *In re Jestice*, 68 Fed. Appx. at 44. While debtor Todd Erlich *presently* may not have the ability to pay this debt, events looming on the horizon in the not-too-distant future compellingly indicate that, in the year 2008, he will have sufficient disposable income to pay it.

Included among the expenses debtors noted at trial was debtor Todd Erlich's obligation to pay child support for his younger daughter in the amount of $711 per month. His obligation to do so will terminate in June of 2008, when she becomes eighteen years old and is emancipated. No evidence was presented at trial which would indicate that this obligation will continue beyond June of 2008 or that debtors' other expenses will significantly increase in the foreseeable future. It therefore follows that debtors' monthly expenses will decrease at that time by $711 per month from $4,048 to approximately $3,337 per month.

The matter does not end there. Evidence also was presented at trial indicating that in September of 2008, debtor Todd Erlich will begin receiving a pension in the gross amount of $2,630 per month from his employment by Castle Shannon Police Department. Debtor Todd Erlich testified at trial that he expected to receive the pension and that the monthly amount thereof will not be affected if he has other employment. The net amount he will receive from the pension is not certain, but should amount at least $2,000 per month.

Although debtors have certain health problems, nothing was offered at trial indicating that they will not be able to continue working into the foreseeable future.

If this anticipated monthly net amount is added to debtors' anticipated future net monthly income beginning in September of 2008, debtors' combined monthly net income will increase at that time from $3,209 to $5,209 per month. When this occurs, debtors' combined monthly net income will exceed their combined monthly expenses by $1,872 per month ($5,209 − $3,337 = $1,872). Debtor Todd Erlich can easily pay the debt he owes to plaintiff and still have disposable income to spare.

It follows from the foregoing that § 523(a)(15)(A) does not apply to this case.

### *§ 523(a)(15)(B)*

The clear and unambiguous language of § 523(a)(15)(B) states that what must be addressed when considering the dischargeability of a debt is whether the benefit to the debtor outweighs the detriment to the former spouse. Use of the term "outweighs" indicates that the former must somehow be *balanced* against the latter.

There is no bright-line test for making such a determination. Congress gave no indication as to how we are to conduct this balancing.

According to the prevailing view, a court should consider the totality of the surrounding circumstances when gauging this balance. *Gamble v. Gamble (Matter of Gamble)*, 143 F.3d 223, 226 (5th Cir. 1998). Factors that may be probative are: (1) the income and expenses of both parties; (2) whether the former spouse is jointly liable with the debtor for debts that will be discharged in debtor's bankruptcy case; (3) the nature of the debts; and (4) the ability of the former spouse to pay the debts. *Hill v. Hill (In re Hill)*, 184 B.R. 750, 755 (Bankr. N.D. Ill. 1995).

Debtor Todd Erlich offered no evidence at trial concerning factors (2), (3) and (4). The evidence he offered related only to factor (1).

It was noted previously that plaintiff presently is employed as a manager of a convenience store/gas station. Her hourly wage is $13.25 per hour. She has health insurance for herself and her present husband, but does not participate in a retirement plan. Her annual net income in 2006 was $20,741.41.

The annual net income of her present husband, who drives a truck for a living, was $22,756.69 in 2006. Included among the amounts withheld from his gross income was support in the amount of $339 per month for his youngest child from a previous marriage.

The combined net income of plaintiff and her present husband in 2006 was $43,498.10 ($20,741.41 + $22,756.41 = $43,498.10) or $ 3,624.08 per month ($43,498.10 ÷ 12 = $ 3,624.08). Considering their relatively good health and lack of valuable "in-demand" job skills – both are high school graduates –, we anticipate that their annual net income will remain "flat" into the foreseeable future.

In response to interrogatories served upon her by counsel to debtor Todd Erlich, plaintiff listed household expenses totaling $3,035.00 per month. She supplemented this amount at trial by testifying that her present husband pays $339 per month in child support and that her phone bill for a land line and cell phones amounts to $190 per month. Adding these expenses to those listed in plaintiff's answer to the above interrogatories, plaintiff's monthly household expenses total $3,564 per month ($3,035 + $339 + $190 = $3,564). The net income of plaintiff and her present husband, in other words, *exceeds* their expenses by $60.08 per month ($3,624.08 – $3,564 = $ 60.08).

The matter does not end there. The obligation of plaintiff's present husband to pay child support in the amount of $339.00 per month will terminate in June of 2008, when his youngest child by a previous marriage turns eighteen. Assuming that

plaintiff's household expenses will remain steady, they will decrease to $3,225 per month as of June of 2008 ($3,564 – $339 = $3,225). Plaintiff and her present husband will have disposable income at that time in the amount of $399.08 per month ($3,624.08 – $3,225 = $399.08).

When considering whether § 523(a)(15)(A) applied, we determined that debtors' combined net income at the time of trial totaled $3,209 per month while their combined expenses totaled $4,808 per month. Their expenses were $809 per month greater than their net income. We then determined that this situation will turn around dramatically in September of 2008, when debtors' combined net income will increase to $5,209 per month while their combined expenses will have decreased to $ 3,337 per month. By September of 2008, their combined net income will exceed their combined expenses by $1,872 per month.

Debtor Todd Erlich would have us infer from the above that the benefit to him of discharging the debt he owes to plaintiff would confer a benefit upon him that outweighs the detriment to plaintiff. This inference is not warranted in light of the circumstances presented in this case.

It is important to recognize what the benefit to debtor Todd Erlich and the detriment to plaintiff will be if the debt owed to plaintiff is discharged. The benefit to

debtor Todd Erlich would be that debtors' combined monthly disposable income would be *commensurately greater* than it would be if the debt is not discharged.[3]

The corresponding detriment to plaintiff would be that her disposable monthly income would be *commensurately less* than it would be if the debt is not discharged. Whether the debt is or is not discharged, however, *both* plaintiff and debtor Todd Erlich would have disposable income.

The benefit-detriment analysis required by § 523a)(15)(B) must not be conducted in a vacuum, but instead with reference to the purposes of bankruptcy relief. Not just any benefit conferred upon a debtor in discharging a debt will suffice for purposes of this provision. The above-listed factors for determining whether § 523(a)(15)(B) applies are not all-inclusive. Also included among the totality of the circumstances that shed light on the dischargeability of the debt at issue in this adversary action is the extent to which discharging a specific debt is required to achieve these purposes.

The schedules accompanying debtors' bankruptcy petition list debts totaling approximately $214,000. Approximately $89,000 of this debt is owed on the mortgage on the former marital residence. This debt resulted when debtor Todd Erlich refinanced the previous debt owed on the property and used $50,000 of the loan proceeds to pay plaintiff pursuant to the provisions of the above family settlement agreement. Debtors' have reaffirmed the debt owed under this latter mortgage.

---

[3.] We are not able to determine precisely how much less debtors' disposable income will be if the debt he owed to plaintiff by debtor Todd Erlich is not discharged and he must pay it. We leave it to the state court to determine whether debtor Todd Erlich should pay the debt he owes to plaintiff in installments and, if so, how much the installments will be per month.

It must be kept in mind when determining whether a debt is discharged by virtue of § 523(a)(15)(B) that by filing a bankruptcy petition, a debtor seeks a "fresh start". The benefit-detriment should be undertaken within this in mind.

Debtors will obtain a "fresh start" whether the debt owed to plaintiff is or is not discharged. They will have disposable monthly in either event. The only difference would be in the amount of surplus income they would have. As was noted previously, debtors will have surplus income in the amount of $1,872 per month if the debt owed to plaintiff is discharged and will have something less than this amount if the debt is not discharged. Discharging the debt owed to plaintiff, in other words, in *not necessary* for to debtors' obtaining a "fresh start".

In light this, discharging the debt at issue in accordance with § 523(a)(15)(B) would simply confer a *windfall* upon debtors. In our estimation, bankruptcy is not intended to confer windfalls upon debtors. The relief bankruptcy is intended confer upon a debtor is more modest in scope than that.

We conclude in light of the foregoing that § 523(a)(15)(B) also does apply in this case.

Because neither § 523(a)(15)(A) nor § 523(a)(15)(B) applies here, the debt in question is not dischargeable.

An appropriate order shall issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: 3-25-08

- 17 -

FILED

MAR 25 2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| **TODD DUNCAN ERLICH and** : | Bankruptcy No. 05-37026 BM |
| **MARION SUZANNE SAITH-ERLICH** : | |
| **a/k/a MARION S. SAITH a/k/a** : | |
| **MARION S. JENNINGS a/k/a** : | |
| **MARION S. SAITH-JENNINGS,** : | |
| : | |
| **Debtor** : | Chapter 7 |
| ****************************** | |
| **KAREN ERLICH, now known as** : | |
| **KAREN M. HARKINS,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | Adversary No. 06-2172 BM |
| : | |
| **TODD DUNCAN ERLICH,** : | |
| : | **Complaint To Determine** |
| **Defendant** : | **Dischargeability Of Debt** |

### ORDER OF COURT

AND NOW, this 25th day of March, 2008, in accordance with the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that **JUDGMENT** be and hereby is entered in favor of plaintiff Karen Erlich, a/k/a Karen Harkins, and against debtor Todd Erlich. The debt owed to plaintiff is **NOT DISCHARGED.**

It is **SO ORDERED**.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

FILED
MAR 25 2008

cm: Parties in interest

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA